STATE ex rel CLARK, Attorney General, v. STAKKE et al.

Under Rev. Code Civ. Proc. § 754, providing that certiorari may be granted where inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error or appeal, nor in the judgment of the court any other plain, speedy, and adequate remedy, and section 760, providing that review on the writ cannot be extended further than to determine whether the inferior court, tribunal board, or officr has reguarly pursued its or his authority, certiorari lies to review the action of an election canvassing board.

Under Rev. Pol. Code, § 2856, as amended by Laws 1903, p. 191, c. 166, requiring the submission, on petition of freeholder voters, at an annual election in any township, town, or city, of the question whether intoxicating liquor shall be sold at retail, and providing that, if a majority of the voters of such township, town, or city shall vote in favor of the sale of intoxicating liquor at retail, the corporate authorities shall grant permits, otherwise not, the sale of intoxicating liquor at retail is defeated where, though it has a majority of the votes

cast on that question, it has not a majority of the highest vote cast at the election on another proposition or for candidates for office.

(Opinion filed, June 29, 1908.)

Original proceeding on writ of certiorari by the state, on the relation of S. W. Clark, Attorney General, against K. O. Stakke and others, members of the city council of Woonsocket, as such and as the canvassing board, and E. M. Newcomb, city auditor. Judgment for relator.

*S. W. Clark, Atty. Gen.* (*Aubrey Lawrence, of counsel*), for plaintiff. *L. L. Lawson, T. J. Spangler,* and *T. H. Null,* for defendant.

FULLER, J. On the 3d day of June, 1908, a writ of certiorari directed to the city auditor and the respective members of the city council of Woonsocket, as the duly authorized board of canvassers for the last annual election held in that city, was granted on the Attorney General's sworn application, which recites facts deemed sufficient to invoke the original jurisdiction of this court. Whether the action of such board of canvassers may be reviewed by certiorari is the principal jurisdictional question presented by a motion to quash the writ filed and taken under advisement concurrently with the return of the defendants.

In support of the contention that certiorari does not extend to the ministerial acts of a canvassing board, and can be directed only to judicial proceedings, numerous California decisions are cited, which we find to be governed by a statute expressly limiting such remedy to cases where jurisdiction has been exceeded by "an inferior tribunal, board or officer, exercising judicial functions," and such was the prevailing rule at common law. Section 754 of our Revised Code of Civil Procedure is as follows: "A writ of certiorari may be granted by the Supreme and circuit courts, when inferior courts, officers, board or tribunals, have exceeded their jurisdiction, and there is no writ of error or appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy." Section 760: "The review upon this writ cannot be extended further than to determine whether the inferior court, tribunal, board or officer, has regularly pursued the authority of such court, tri-

bunal, board or officer." In State ex rel. v. County Comm. Hughes County, I S. D. 292, 46 N. W. 1127, 10 L. R. A. 588, it was declared that "this statute is not only unlike the common law, but equally unlike the law of any other state, so far as we have had the means to pursue inquiry," and it was there expressly held that the office of the writ is not confined to a review of judicial proceedings, but extends to the erroneous determination of a question of law in a matter concerning which no judicial function is exercised. There being no writ of error or appeal, nor any other plain, speedy, and adequate remedy, this decision, based on the provisions above quoted, amply justifies the granting of the writ, and we therefore proceed to examine the return of the defendants thereon for the purpose of determining whether their authority as a board of canvassers was pursued and exercised in a manner warranted by the statute.

From a duly authenticated transcript of the record returned by the defendants in obedience to the mandatory requirement of the writ, it appears that the question, "Shall intoxicating liquors be sold at retail?" was submitted to the legal voters at the annual election held in the city of Woonsocket on the 21st day of April, 1908, for the selection of municipal officers. The returns duly canvassed and abstracted by the defendants show that 275 legal votes were cast at the election for the respective candidates for the office of mayor, and that upon the question, "Shall intoxicating liquors be sold at retail?" but 273 votes were cast, of which 137 were in the affirmative and 136 in the negative. Though the ballots cast in favor of the retail sale of intoxicating liquors is a majority of all the votes cast for and against the proposition, it is conceded and shown by the record that the number of voters thus declaring by their ballots in favor of such sale was less than a majority of the qualified voters of the city, as shown by the aggregate number of votes cast at the election for the different candidates for office. Acting in the utmost good faith, but considering the question determinable by a majority of the votes cast in response to the question, instead of the number of votes cast at the election or the number of voters in the city, the defendants found that the required majority had voted in favor of the traffic and declared the

proposition carried.    Upon the petition of a specified number of freeholder voters section 2856 of the Revised Political Code, as amended by chapter 166, p. 191, Laws 1903, requires the submission of the question "Shall intoxicating liquors be sold at retail?" to the voters upon a separate ballot at the annual municipal election held for municipal purposes in any township, town, or city in this state, and provides that, "if a majority of the voters of such township, town, or city shall vote in favor of such sale of intoxicating liquors at retail, the corporate authorities thereof shall grant permits for such sale for the ensuing year in accordance with the provisions of this act, but, if a majority of the voters shall vote against such sale, no such permits shall be granted."    Therefore, the precise inquiry is whether the question, "Shall intoxicating liquors be sold at retail?" was carried by the affirmative answer of 137 voters at the annual municipal election, where more than twice that number cast their ballots.

Evidently the solution of the question presented depends upon the correct construction of the legislative enactment expressly providing that no permits to sell intoxicating liquors at retail shall be granted by the corporate authorities of any township, town, or city in this state, unless "a majority of the voters of such township, town, or city shall vote in favor of such sale."    Section 4, art. 13, Const. S. D., limits municipal indebtedness to a specified percentage of the assessed valuation, and declares that no additional debt shall ever be incurred "unless authorized by a vote in favor thereof by a majority of the voters of such county, municipal corporation, civil township, district or subdivision incurring the same."    There is no distinction between these two provisions, the latter of which was construed in the recent case of Williamson v. Aldrich, 21 S. D. 13, 108 N: W. 1063, where it was held that the concurrence of a majority of the qualified electors of the city of Aberdeen in an affirmative vote favorable to the proposition is vitally essential to the validity of bonds to be issued for the purpose of providing the city with an electric lighting plant, and that a majority of those voting is not sufficient when it is conceded to be less than a majority of the qualified electors of such city.    Although the 833 votes cast in favor of the proposition at the election held in Aberdeen for

the purpose of authorizing the issuance of the bonds was a majority of the votes cast for and against their issuance, it was admitted of record that there were 1,700 duly qualified electors in the city at the time of the election, and consequently no question was presented as to the manner of determining what constitutes a majority of all the qualified electors of a municipality.  In the absence of a more reliable method for determining the number of voters in any township, town or city qualified to vote at a special election duly called for the purpose of submitting a single proposition, it may doubtless be assumed that all qualified voters remaining away from such election thereby assent to and concur in the expressed will of the majority of those present and voting at the election.  This criterion makes the votes found in the ballot box and correctly canvassed conclusive as to the number of voters in the electoral district, and a favorable vote in excess of one-half the aggregate number of votes thus returned is sufficient to carry the single proposition, although the statute provides that it must receive in its favor the vote of a majority of the qualified electors of such district.

However, this numerical test should not be employed to determine the result of the vote on any proposition submitted with other propositions, or at an annual election for the selection of municipal officers, when the returns show that the majority of the votes cast on the proposition is less than a majority of the highest number of votes polled at the election, which, in the absence of better evidence, may be deemed the expression of the aggregate number of qualified voters in the city.  It would be fallacious to hold that a majority of the voters of the city of Woonsocket voted in favor of the retail sale of intoxicating liquors when the record affirmatively shows that but 137 of the 275 votes actually cast at the election were in favor of such traffic.  Where a statute in plain language requires that "a majority of the voters of such township, town, or city shall vote in favor of such sale of intoxicating liquors at retail," decisions based on such phraseology as "a majority of the electors voting at the election," "a majority of all the voters of the county voting upon the proposition," and other similar expressions are not controlling, and the conclusion is

irresistible that the declaration of the defendants that the proposition had carried is erroneous, without authority and in excess of their jurisdiction.

Judgment conformable to this view will therefore be entered.